[618 NYS2d 330]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
LAWRENCE ROBERTSON, Appellant.

First Department, November 15, 1994

APPEARANCES OF COUNSEL

*John R. Wing* of counsel *(Victoria A. Kummer* on the brief; *Weil, Gotshal & Manges,* attorneys), for appellant.

*Ann C. Sullivan* of counsel *(Patrick J. Hynes* on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent.

## OPINION OF THE COURT

ROSENBERGER, J.

The defendant was entitled to a missing witness charge with respect to the complainant's two cousins, who were eyewitnesses to the incident at issue.

Only the 15-year-old complainant and the defendant testified as to what occurred on a subway train at 1:00 A.M. on December 26, 1992. According to the complainant, he and his cousins, 15-year-old Gregory Scott and 13-year-old Samuel Artis, were sitting on the train, talking, when the defendant and his friends approached. The defendant kicked the complainant in the face, and, along with one of his friends, produced "blades" and demanded the complainant's jacket. The defendant's friend walked Scott to the end of the car and told the complainant that he was going to take Scott's sneakers. The defendant then purportedly cut the complainant on the eyebrow, while his friend took a chain from the complainant's neck. When the complainant struggled, the defendant cut him on his hand. The complainant then gave the defendant his jacket.

On cross-examination, the complainant stated that he knew where Scott lived and that he had spoken to him a week before the trial. He further stated that when he asked him to testify, he indicated that he would. Following the prosecutor's objection to defense counsel's attempt to question the complainant further about Scott, a sidebar conference was held at which defense counsel indicated that he intended to request a missing witness charge. The court denied the request and precluded defense counsel from attempting to lay more of a foundation for a missing witness charge with respect to Scott and Artis.

At the close of the People's case, the Supreme Court denied defense counsel's formal request for a missing witness charge with respect to the complainant's two cousins. The defendant then testified that he joined the fight only after the complain-

ant and the other boys grabbed his friend's chain and punched him in the face. He swung at the complainant with a box cutter only after the complainant swung at him with something shiny and pointed, cutting him on his finger. A police officer testified that he later saw the defendant bleeding from a cut on his hand at the station house. The defendant denied participating in a robbery. Defense counsel's renewed request for a missing witness charge as to Scott was denied.

The defendant met his burden of demonstrating that Scott and Artis "could be expected to have knowledge about a material issue and to testify favorably to the opposing party" by establishing their presence on the train when the incident about which the complainant and the defendant provided conflicting accounts, took place *(People v Kitching,* 78 NY2d 532, 536-537; *People v Gonzalez,* 68 NY2d 424, 428). The People failed to meet their burden of accounting for the witness' absence, or otherwise demonstrating that the charge would not be appropriate *(supra).*

The record, supplemented by exhibits pursuant to this Court's order on motion No. 2169, simply fails to support the People's contentions that the application for a missing witness charge was untimely, that neither Scott nor Artis was under the control of the People or available to them, that neither had knowledge about the material issue in the case and that, to the extent that they had any knowledge at all about the robbery, that knowledge was collateral and cumulative.

The contention that defense counsel's motion for a missing witness charge was untimely is being raised for the first time on appeal. Therefore, the issue has not been preserved for our review *(People v Erts,* 73 NY2d 872, 874; *People v Brown,* 183 AD2d 569, *lv denied* 80 NY2d 901; *People v Gayle,* 162 AD2d 261, *lv denied* 76 NY2d 857). In any event, given the fact that Scott was listed as a witness on the prosecutor's witness list but was not called to testify, defense counsel's request for the charge during cross-examination of the People's only eyewitness, after the relationship between the complainant and Scott was established, was made "as soon as practicable" *(People v Gonzalez, supra,* at 428). The timing of defense counsel's motion did not prevent the prosecutor from calling the missing witnesses either before the defendant testified or in rebuttal, nor was he deprived of the opportunity to tailor his trial strategy to avoid " ' "substantial possibilities of surprise" ' " *(People v Gayle, supra,* at 262, quoting *People v*

*Gonzalez, supra,* at 428; *People v Howard,* 200 AD2d 538, *lv denied* 83 NY2d 968).

The People failed to demonstrate that the uncalled witnesses were unavailable. At trial, the prosecutor claimed that he had spoken to Scott on the day of the incident but had not been able to reach him since. On appeal, the People maintain that the whereabouts of both witnesses were unknown and that they could not be located despite diligent efforts. However, the prosecutor never identified any such diligent efforts made to locate the uncalled witnesses at trial, thereby precluding the trial court from determining whether or not they were available *(see, People v Vasquez,* 76 NY2d 722; *People v Gonzalez, supra; People v Roberts,* 187 AD2d 615, *lv denied* 81 NY2d 846; *People v Gladden,* 180 AD2d 747).* The trial court merely accepted the prosecutor's unsupported claim and cut short defense counsel's cross-examination, preventing him from laying any foundation at all with respect to Artis. Moreover, documents belie the People's claim that the whereabouts of the witnesses were unknown.

The People further maintain that neither Scott nor Artis was under their control. However, since the People "had the physical ability to locate and produce the witness[es], and there was such a relationship, in legal status or on the facts, as to make it natural to expect" the People to have called them to testify in their favor *(People v Gonzalez, supra,* at 429), a missing witness charge was appropriate. A close relative of the complainant can be expected to testify favorably to the prosecution *(supra,* at 430). Since the uncalled witnesses were cousins as well as friends of the complainant, and, since Scott was also allegedly victimized by the complainant's assailants in the same incident, both Scott and Artis clearly qualified as witnesses under the control of the prosecution *(see, People v Dillon,* 157 AD2d 742, *lv denied* 75 NY2d 965; *see also, People v Gayle, supra; cf., People v Justice,* 202 AD2d 362, *lv denied* 83 NY2d 1004; *People v Magett,* 196 AD2d 62; *People v Lacy,* 166 AD2d 168, *lv denied* 76 NY2d 987).

The trial court's reliance on the youth of the witnesses as a reason to deny defense counsel's motion for a missing witness charge was error. Scott was the same age as the complainant upon whose testimony the defendant was convicted. A charge including the "tender years" addendum, in which the jury is instructed to consider the witness' age in determining the impact, if any, of the People's failure to call them to testify, could have been provided.

The People's contention that the uncalled witnesses lacked knowledge about a material issue, since there was no evidence that either witnessed the robbery is also without merit. "What the witness[es] *actually saw or could have seen* are the precise questions which [they] could have answered if [they] had been called to testify and which the prosecution chose to leave unanswered by not calling the witness[es]" *(People v Kitching, supra,* at 538 [emphasis in original]). Both witnesses were on the train with the complainant and the defendant during the incident. Both were seated directly across from the complainant when he was first approached by the defendant and his friends. The complainant then moved to Scott's seat, next to Artis, where he was allegedly kicked in the face by the defendant. The defendant disputed the complainant's version of the incident. Clearly, Scott and Artis were in the best position to corroborate or refute the parties' contentions. The testimony of these witnesses, where proof that the defendant committed the crime charged depended almost entirely on the testimony of a single witness, would have been neither cumulative nor trivial *(People v Brown,* 34 NY2d 658). The testimony would have been particularly important since "the lines of dispute were drawn sharply in terms of credibility and the testimony of the * * * additional person[s] * * * present might have made the difference" *(People v Rodriguez,* 38 NY2d 95, 101; *and see, People v Ronchi,* 154 AD2d 891; *People v Anderson,* 112 AD2d 782).

Contrary to the People's contention, the defendant was prejudiced by the failure to provide the missing witness charge. Although defense counsel was permitted to argue the issue to the jury, his argument was obviated by the prosecutor's summation, which instructed the jurors not to speculate about why the witnesses were not called, and the trial court's charge, which reinforced this admonition *(cf., People v Ortiz,* 193 AD2d 449, *affd* 83 NY2d 989).

The error was not harmless. The evidence of the defendant's guilt consisted solely of the testimony of the 15-year-old complainant, whose testimony was in direct conflict with that of the defendant. It cannot be said that there was no significant probability that a jury, properly instructed, would have acquitted the defendant *(see, People v Vasquez, supra; People v Crimmins,* 36 NY2d 230; *People v Roberts, supra; People v Gladden, supra; cf., People v Fields,* 76 NY2d 761).

Accordingly, the judgment, Supreme Court, New York

County (Bookson, J.), rendered September 10, 1993, convicting the defendant, after jury trial, of robbery in the first degree, and sentencing him to a term of two to six years, should be reversed, on the law, and the matter remanded for a new trial.

CARRO, J. P., KUPFERMAN, NARDELLI and TOM, JJ., concur.

Judgment, Supreme Court, New York County, reversed, on the law, and the matter remanded for a new trial.